UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANK W. EMERY,

    Plaintiff,

    v.    CAUSE NO. 3:23-CV-809-DRL-MGG

RON NEAL,

    Defendant.

OPINION AND ORDER

Frank W. Emery, a prisoner without a lawyer, filed an amended complaint. ECF 6. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Emery alleges that when he entered the custody of the Indiana Department of Correction on August 18, 2022, he was diagnosed with a large "stagnant" kidney stone that doctors at St. Francis Hospital and Urology of Indiana had determined needed to be removed surgically. ECF 6 at 2. During intake at the Reception Diagnostic Center, he alleges he disclosed this medical need and medical staff took an x-ray of his left kidney to confirm his need for surgery. He alleges he began to pass a smaller kidney stone on September 9, 2022, and medical staff prescribed Flomax and ibuprofen, and they gave

him a urinal bottle and a funnel strainer so that he could filter the stone out of his urine for testing.

Mr. Emery alleges that he was still in the process of passing the smaller kidney stone when he was transferred to Indiana State Prison (ISP) on October 4, 2022. ECF 6 at 2-3. During intake, he alleges he alerted medical staff that he was in the process of passing a kidney stone and that he needed surgery to remove a stagnant kidney stone that would not pass on its own. At first, he was placed in a holding cell located on the second-floor level of G-Dorm, but a few days later he was transferred to Disciplinary Segregation Housing, where he was not allowed to keep his medication on his person or have bottles of any kind. All of his medication and medical equipment were confiscated.

After his medication and medical equipment were confiscated, Mr. Emery alleges he sent Medical Request Forms on October 10, October 15, and October 20, 2022, requesting pain medication and Flomax and asking about the equipment used to catch the stone for further testing. ECF 6 at 3. He says he was not given any medication to relieve his excruciating pain and was informed that the Acting Major at ISP had confiscated his other medical equipment and it would not be returned. He alleges he passed the kidney stone on October 27, 2022, without receiving any medication.

The next day, on October 28, 2022, Mr. Emery alleges he was taken to the medical office for an examination. ECF 6 at 3. He says he informed the medical staff that he had already passed the smaller kidney stone and asked about the status of the surgery to remove the larger stone. Medical staff allegedly told him they would look into surgery.

On November 17 and November 22, 2022, Mr. Emery alleges that he sent a Medical

2

Request Form seeking the status of the kidney stone surgery. ECF 6 at 3. When he was seen at medical on November 28, 2022, the medical staff claimed to have no previous knowledge of his need for kidney stone surgery but told him they would look into it. When nothing happened over the next several days, he sent another medical request on December 9, 2022, seeking an update on the status of the surgery. At a medical visit on December 19, 2022, medical staff again had no knowledge of his need for kidney stone surgery. He signed a release form, allowing ISP to obtain a copy of his medical records from the outside hospital that recommended surgery. At Mr. Emery's annual checkup on January 5, 2023, medical staff again claimed they were not aware of his need for kidney stone surgery.

On March 10, 2023, Mr. Emery alleges he was passing another kidney stone and sent a Medical Request Form marked URGENT to request pain medication for the severe and excruciating pain he was enduring. ECF 6 at 4. He passed the kidney stone on March 15, 2023, without any medication. Two days later, he was taken to medical to address the pain from his kidney stone, which at this point had passed. Again, medical staff claimed to have no knowledge of his need for kidney stone surgery. For a second time, he signed release forms for ISP to receive his outside medical records.

Mr. Emery alleges he was passing another kidney stone on April 15, 2023, and sent another Medical Request Form asking for Flomax and pain medication. ECF 6 at 4. But he says he did not receive any medication by the time the stone passed on April 26, 2023.

Mr. Emery says he sent additional Medical Request Forms on April 29, 2023, and May 15, 2023, inquiring about the status of the surgery. ECF 6 at 4. Mr. Emery was seen

3

at medical for an unrelated issue on June 1, 2023, and again asked about the status of the surgery. He says medical staff seemed to have no knowledge of his need for surgery, but he was scheduled for an x-ray of his left kidney.

On June 5, 2023, Mr. Emery received an x-ray of his left kidney. ECF 6 at 4. The person taking the x-ray commented that, although she could not discuss the results of the x-ray, she mentioned that she could see a large mass inside the kidney. But, he continues, no medical provider ever discussed the results of the x-ray with him.

When Mr. Emery began passing another kidney stone on August 7, 2023, he alleges he sent another Medical Request Form asking for medication to help him. ECF 6 at 4. By the time he was seen on August 12, 2023, he had passed the kidney stone the day before. At that visit, the medical staff seemed unaware of his need for surgery or of the results of the x-ray. He alleges that as of September 25, 2023, he had not received notification of any scheduled surgery or been told the results of the June x-ray.

Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). But, under the Eighth Amendment, they are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Neither negligence nor medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted).

Here, Mr. Emery does not state a claim against any of the defendants for damages. As to the Indiana Department of Correction, that entity is an arm of the State and cannot be sued in federal court for money damages under 42 U.S.C. § 1983. *See Will v. Michigan*

5

*Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Turning to ISP Warden Ron Neal and ISP Medical Director Dr. Nancy Merthakis, Mr. Emery does not mention either in the body of the complaint, so there is no basis to conclude either was personally involved in his medical care. A § 1983 suit requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). To the extent that Mr. Emery is attempting to hold the warden liable because he is in charge of the facility and Dr. Merthakis liable because she oversees the medical department, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. The amended complaint does not allege that either of them was personally involved in making decisions regarding Mr. Emery's medical care or was even aware of his medical needs.

The remaining defendant, ISP Grievance Specialist J. Wallen, is mentioned in the body of the complaint. Mr. Emery alleges that on November 8, 2022, he filed a grievance for medical neglect. ECF 6 at 3. He says Grievance Specialist Wallen denied the grievance on the basis that his medical needs were being met and his medical care had been appropriate, accurate, and efficient.

These allegations do not provide a basis to hold Grievance Specialist Wallen liable. Mr. Emery does not say what specifically he told Grievance Specialist Wallen in his grievance, so there is no plausible basis to infer that he was aware of a substantial risk of harm to Mr. Emery. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (noting plaintiff

6

"has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." (quotations omitted)). In addition, it appears that Grievance Specialist Wallen investigated the grievance, and he is entitled to rely on the judgment of medical professionals that the care being provided is appropriate. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, nonmedical jail staff may generally trust the professionals to provide appropriate medical attention."). Thus, there is no basis to reasonably infer that Grievance Specialist Wallen was deliberately indifferent to a substantial risk of harm to Mr. Emery.

Despite the lack of allegations connecting any individual defendant to the claim, Mr. Emery states a claim for injunctive relief based on the allegations that he is currently not receiving adequate medical care for his recurring kidney stones. Here, the complaint plausibly alleges that Mr. Emery's medical care does not meet constitutional standards because his recurring kidney stones go untreated. The Warden of ISP, Ron Neal, has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate care as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Emery will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care for his recurrent kidney stones.

It appears from the complaint that Mr. Emery is seeking immediate relief, so the court will construe his complaint as a motion for a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions, meaning "those requiring an affirmative act by the defendant," are "cautiously viewed and sparingly

8

issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotations omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and quotations omitted). As discussed above, Mr. Emery has alleged that he is not receiving constitutionally adequate care for his recurrent kidney stones. The court will order the Warden to respond to the preliminary injunction motion before taking further action on it.

For these reasons, the court:

(1) DIRECTS the clerk to edit the docket to reflect that Ron Neal is being sued in his official capacity as the Warden of Indiana State Prison;

(2) CONSTRUES the amended complaint (ECF 6) as a motion for a preliminary injunction and DIRECTS the clerk to separately docket it as a motion for a preliminary injunction;

(3) GRANTS Frank W. Emery leave to proceed against Ron Neal in his official capacity for injunctive relief to receive constitutionally adequate medical care for his recurrent kidney stones as required by the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Indiana Department of Corrections, Nancy Merthakis, and J. Wallen;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) DIRECTS the clerk to email or fax a copy of the same documents to Warden Ron Neal at Indiana State Prison;

(8) DIRECTS the clerk to make a docket notation upon receiving confirmation of receipt of those deliveries;

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order;

(10) ORDERS Warden Ron Neal to file and serve a response to the motion for a preliminary injunction as soon as possible, but not later than **November 7, 2023**, (with supporting medical documentation and declarations from other staff as necessary) describing/explaining how Frank W. Emery is receiving constitutionally adequate medical care for his recurrent kidney stones; and

(11) GRANTS Frank W. Emery fourteen days to reply to the Warden's response to the motion for a preliminary injunction.

SO ORDERED.

October 30, 2023  *s/ Damon R. Leichty*
Judge, United States District Court