UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANK W. EMERY,

      Plaintiff,

          v.                        CAUSE NO. 3:23-CV-809 DRL-AZ

RON NEAL, MERTHAKIS, and KAREN
FUGAN,

      Defendant.

OPINION AND ORDER

Frank W. Emery, a prisoner without a lawyer, was previously granted leave to proceed against "against Ron Neal in his official capacity for injunctive relief to receive constitutionally adequate medical care for his recurrent kidney stones as required by the Eighth Amendment[.]" ECF 8 at 9. The complaint was construed to include a motion for a preliminary injunction, which was denied after briefing. ECF 28. Now, he has filed an amended complaint, seeking to bring claims for damages against additional defendants. ECF 57. Under 28 U.S.C. § 1915A, the court must review the merits of that amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted).

Mr. Emery alleges that before his incarceration, he was diagnosed with a staghorn kidney stone[1] and scheduled for surgery to remove it. According to him, the only treatment for a staghorn kidney stone is surgery because the stone will not pass on its own and will intermittently break off smaller kidney stones that cause pain and potentially cause damage to his body as they pass. The surgery, however, did not occur because Mr. Emery was incarcerated before the date of the scheduled surgery. He alleges that when he entered the Reception Diagnostic Center (RDC), he disclosed his need for surgery to remove the large staghorn kidney stone, as directed by his doctors at St. Francis Hospital and Urology of Indiana. During his intake, RDC medical providers ordered an x-ray of his left kidney to confirm a need for surgery. He alleges the x-ray confirmed his need for surgery.

In September 2022, while still at RDC, Mr. Emery alleges he began passing a kidney stone. Medical staff prescribed him Flomax and ibuprofen and gave him a plastic urinal bottle and funnel strainer to catch the kidney stone when it passed so that the stone could be submitted for testing. But Mr. Emery was transferred to Indiana State Prison (ISP) on October 4, 2022, before the kidney stone passed. At his intake, he told medical staff that he was in the process of passing a kidney stone and told them that he had been

---

[1] Mr. Emery describes it as a "stagnant" kidney stone. He is most likely referring to a staghorn kidney stone. "Staghorn calculi are complex renal stones that occupy the majority of the renal collecting system and are of particular importance to urologists as they often carry high morbidity and mortality rates. Treatment is often complicated but necessary given that untreated stones can lead to recurrent urinary tract infections, urosepsis, renal deterioration, and death." Sharbaugh, et al., *Contemporary best practice in the management of staghorn calculi*, Therapeutic Advances in Urology, 2019 Jan.-Dec., https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8842174/#.

scheduled for surgery to remove a staghorn kidney stone, but the surgery was canceled due to his incarceration.

A few days after he entered ISP, Mr. Emery was transferred to disciplinary segregation housing on October 7, 2022, for reasons he does not explain in the complaint. This housing unit did not allow him to keep any medication or bottles in his cell. As a result, the Flomax, ibuprofen, plastic urinal bottle, and funnel strainer he had been issued were confiscated. He sent three medical requests that month—on October 10, 15, and 20—asking for his medication and for the equipment he needed to capture the kidney stone for testing. He alleges he was in excruciating pain.

Mr. Emery alleges he learned on October 20, 2022, that the plastic urinal and funnel strainer had been confiscated by Major Warlow and he would not be allowed to get them back. As a result, he was not able to catch the kidney stone, which passed on October 27, so was not able to have the kidney stone tested, delaying further diagnosis or treatment. He faults Major Warlow for interfering with his medical treatment and believes he should not be allowed to interfere with medical orders.

On October 28, 2022, the day after Mr. Emery had passed the smaller kidney stone, he alleges he was taken to the medical office to discuss his kidney stone and other issues. He told medical staff that he had passed the smaller kidney stone and asked about the status of the surgery for the larger kidney stone. He was told that medical staff would look into it.

Mr. Emery alleges that in November 2022, he sent two medical request forms asking about the status of the kidney stone surgery. When he was seen by medical staff

3

on November 28, 2022, they claimed to have no previous knowledge of his need for kidney stone surgery. They promised him they would look into it.

Mr. Emery alleges he next submitted a medical request form on December 9, 2022, seeking an update on the status of his kidney stone surgery. When he was seen on December 19, 2022, medical staff again claimed to have no previous knowledge of his need for kidney stone surgery. He signed a release form, allowing ISP to obtain a copy of his medical records from St. Francis Hospital and Urology of Indiana to confirm the need for such surgery.

At his annual checkup on January 5, 2023, Mr. Emery says he again asked about the status of his surgery. Medical staff again claimed they have had no previous knowledge of his need for a kidney stone surgery. The American Civil Liberties Union (ACLU) agreed to look into Mr. Emery's medical issue in early 2023 and reported that Dr.  Merthakis stated that medical staff were unaware of his need for surgery.

On March 10, 2023, Mr. Emery sent another medical request form alerting the medical staff that he was passing another kidney stone. He marked the request "URGENT" and requested pain medication to help with the severe and excruciating pain he was experiencing. But he passed the kidney stone on March 15 before he received any medical attention. He was not taken to medical until March 29, after he had passed the stone.

At that visit, he allegedly asked ISP Medical Director Karen Fugan for an update on his kidney stone surgery and was again told that they had no prior knowledge of his

need for surgery. He signed another consent for ISP medical staff to obtain a copy of his outside medical records.

On April 15, 2023, Mr. Emery sent a medical request form marked URGENT about a new kidney stone he was passing. He requested Flomax and pain medication to help with the severe and excruciating pain he was having. He alleges he passed the kidney stone on April 26 without ever being seen by medical.

On May 15, 2023, Mr. Emery sent a medical request form seeking an update on the status of the kidney stone surgery. When he was seen in medical on June 1, 2023, for an unrelated medical issue, he asked again about the status of the kidney stone surgery. He alleges medical staff seemed to have no knowledge of his need for that surgery. At this visit, medical staff set up an appointment for him to have an x-ray of his left kidney on June 5, 2023. At the x-ray, the x-ray technician said she could not discuss the results of the x-ray, but she did see a large mass inside his left kidney. Mr. Emery alleges he asked about Medical Director Fugan about the results of the x-ray at a visit on July 5, 2023, but he does not disclose what she told him.

Mr. Emery alleges he began passing another kidney stone and sent a medical request form on August 7, 2023, to request Flomax and pain medication for the severe and excruciating pain. He received Tylenol, which he alleges is not strong enough to alleviate the pain from a kidney stone. He passed the stone four days later on August 11.

The next day, on August 12, 2023, Mr. Emery was seen for a Chronic Care Visit. He alleges he told staff that he had passed the smaller kidney stone but still needed

surgery to remove the larger kidney stone. Staff again seemed unaware of his need for surgery and did not know the status of the previous x-ray.

On November 5, 2023, Mr. Emery was taken to Franciscan Health Center for a CT Scan of his lower abdomen. He alleges that as of May 22, 2024, no one has discussed the results of the scan with him.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Eighth Amendment does not require that prisoners receive unqualified access to health care") (citation and quotations omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Because there is no one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no

minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Persisting with a course of treatment known to be ineffective can amount to deliberate indifference. *Id.* "Mere negligence will not suffice, and deliberate indifference is not coextensive with medical malpractice." *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024).

Mr. Emery first seeks to hold Medical Director Merthakis, Kim Phlugstump, Karen Fugan, Tiffany Turner, and Teegan Nelson liable for not following the recommendation of a specialist and delaying the surgery he needs for his kidney stone. He alleges generally that each of them "have been alerted numerous times to [his] need for such specialized care" through medical requests. However, in the body of the complaint, he discusses the particular involvement of only Medical Director Merthakis and Karen Fugan in his treatment decisions. Thus, he may proceed only against them for deliberate indifference to his need for surgery.

Regarding the others, Kim Phlugstump is identified only as a "medical provider" and Tiffany Turner and Teegan Nelson are identified as nurses. ECF 57 at 6. There is no plausible basis in the complaint to infer that any of them had the authority to recommend surgery. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law"). Mr. Emery has not stated a claim against these defendants.

Next, Mr. Emery seeks to hold Medical Director Merthakis and Staff Members Kim Phlugstump, Karen Fugan, Tiffany Turner, and Teegan Nelson liable for failing to provide him treatment when he submitted medical requests seeking pain medication and Flomax when passing a kidney stone. ECF 57 at 22. However, the complaint does not state which defendants were involved in answering his medical requests. Without more information about each defendant's role in the provision of medical care, the court cannot reasonably infer that any of them would have had the personal involvement in the medical request process that is necessary for liability under 42 U.S.C. § 1983. "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). To the extent that Mr. Emery refers to exhibits found elsewhere in the record, the court declines to search those out to determine which defendants may have been involved. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). However, giving Mr. Emery the inferences he is entitled to, it is reasonable to infer that Karen Fugan would have been aware of a future need for pain relief and Flomax when they discussed his kidney stone issues during medical visits. He may, thus, proceed against her for failing to make a treatment plan for future kidney stones that were likely to recur.

The complaint plausibly alleges that Mr. Emery is not currently receiving adequate care for his recurrent kidney stones. Therefore, he may still proceed against Warden Ron Neal in his official capacity for injunctive relief to receive constitutionally adequate care for his recurrent kidney stones as required by the Eighth Amendment.

Mr. Emery also seeks to hold Major Douglas Warlow liable for confiscating his medication, urinal, and funnel strainer when he entered segregation. Regarding the equipment, it is not a reasonable inference that taking the unauthorized items presented a serious risk of harm to Mr. Emery. He contends that not being able to catch the kidney stone delayed proper diagnosis of his kidney stone, but that is too speculative to allow a claim to go forward. Nor may he proceed on a claim about Major Warlow confiscating his medication. There are no allegations that Major Warlow prevented medical staff from administering the medication as needed, and so it is not a reasonable inference that preventing Mr. Emery from keeping his medication in his cell constituted deliberate indifference to his medical needs.

Mr. Emery includes as defendants ISP Grievance Specialist J. Wallen and the unknown ISP Legal Staff who investigated the ACLU's inquiry. As to Grievance Specialist Wallen, Mr. Emery alleges he is liable for not doing an in-depth investigation into his medical care before denying a grievance that he filed in November 2022 about his need for kidney stone surgery, among other things. Grievance Specialist Wallen denied the grievance, stating that Mr. Emery's medical needs were being met and his medical care had been appropriate, accurate, and efficient. As to the unknown ISP Legal Staff member, Mr. Emery challenges the response to the ACLU's inquiry, which

9

concluded "ISP Medical staff had never been notified of any pain or discomfort due to kidney stones by the Plaintiff besides the stone that was passed in October of 2022, nor had the Plaintiff alerted the ISP Medical Staff of needed surgery for a stagnant stone or any other kidney stone problems." ECF 57 at 15. Mr. Emery contends that both of these defendants should be held liable for not doing a better investigation into his complaints.

Mr. Emery has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). But, additionally, the handling of this matter was not done with deliberate indifference to Mr. Emery's medical needs. The amended complaint shows that both Grievance Specialist Wallen and the ISP Legal Staff member investigated his issue and, as nonmedical staff members, they are entitled to rely on the judgment of medical staff whether care is being appropriately provided. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). There was no obvious reason here for them to doubt that judgment.

The Indiana Department of Corrections will also be dismissed. The department is an arm of the state, *see* IND. CODE § 11-8-2-1, so it is not a "person" who can be sued under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580-81 (7th Cir. 2003).

Finally, Mr. Emery names as a defendant an unknown Jane Doe Correctional Officer, describing an instance in which she allegedly ignored his need for emergency medical care when he was suffering from severe chest pain. This defendant will be dismissed as improperly joined under Federal Rule of Civil Procedure 20 because

whether that correctional officer properly responded to his chest pain is unrelated to the care he is receiving for his kidney stones.

Because Mr. Emery filed this amended complaint, the court will deny without prejudice the pending summary judgment motion on the issue of whether Mr. Emery exhausted his administrative remedies before filing suit. ECF 33.

For these reasons, the court:

(1) DENIES WITHOUT PREJUDICE the motion for summary judgment (ECF 33);

(2) DISMISSES Jane Doe Correctional Officer as improperly joined;

(3) GRANTS Frank W. Emery leave to proceed against Medical Director Merthakis and Karen Fugan in their individual capacities for compensatory and punitive damages for deliberate indifference to his need for kidney stone surgery in violation of the Eighth Amendment;

(4) GRANTS Frank W. Emery leave to proceed against Karen Fugan in her individual capacity for compensatory and punitive damages for deliberate indifference to his need for a treatment plan for future kidney stones that were likely to recur in violation of the Eighth Amendment;

(5) GRANTS Frank W. Emery leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to receive constitutionally adequate medical care for his recurrent kidney stones as required by the Eighth Amendment;

(6) DISMISSES all other claims;

(7) DISMISSES Indiana Department of Corrections, J. Wallen, Douglas Warlow, Kim Phlugstump, Tiffany Turner, John/Jane Doe, and Teegan Nelson;

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Medical Director Merthakis and Karen Fugan at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 57);

(9) ORDERS Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Medical Director Merthakis and Karen Fugan to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(11) REMINDS Warden Ron Neal that his answer to the amended complaint is due within 14 days under Fed. R. Civ. P. 15(a)(3).

SO ORDERED.

August 26, 2024                          s/ Damon R. Leichty
                                         Judge, United States District Court