UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANK W. EMERY,

       Plaintiff,

       v.                                CAUSE NO. 3:23cv809 DRL-AZ

RON NEAL, MERTHAKIS, and KAREN
FUGAN,

       Defendants.

OPINION AND ORDER

Frank W. Emery, a prisoner without a lawyer, was granted leave to proceed on a claim against the Warden of Indiana State Prison (ISP) for permanent injunctive relief related to the medical care he is receiving for recurrent kidney stones as well as other claims for damages. ECF 58. Mr. Emery moves for a preliminary injunction, raising two main issues: (1) whether he is receiving adequate medical care for a large two-centimeter kidney stone, and (2) whether he is receiving adequate medical care, including pain management, for recurrent kidney stones.[1] ECF 108.

However, after the motion was fully briefed, Mr. Emery filed what he titled a motion for leave to make corrections, withdrawing his claim regarding the care he is receiving for this kidney stone. ECF 136. He explains that he has since learned that his theory that small pieces were breaking off the larger stone is incorrect, and he seeks to

---

[1] Mr. Emery raises additional claims in his preliminary injunction related to other medical issues. But he is proceeding in this case only on claims related to his kidney stones, and he was told that medical claims beyond the scope of his kidney stones were not at issue in this case. *See* ECF 114.

proceed only on the part of the injunction regarding constitutionally adequate medical care for his recurrent kidney stones. Because he has abandoned his other claim, the court will limit this order accordingly.

BACKGROUND

In response to Mr. Emery's motion for a preliminary injunction, the Warden submits an affidavit from his treating physician and portions of his medical records. The record in this case show that Mr. Emery entered the Indiana Department of Correction in 2022 already suffering from kidney stones. He was scheduled for surgery to remove a stone that was present in his kidney but would not pass on its own. His incarceration, however, interrupted that surgery.

Mr. Emery describes several instances since 2022 of passing kidney stones. Mr. Emery previously believed these small kidney stones broke off the large one in his kidney, and he would continue to suffer from these smaller kidney stones until the large stone was removed. But he has since learned that is not true. Instead, he asserts that he is prone to forming kidney stones.

Mr. Emery's medical records show that since 2023, he had an active daily prescription for hydrochlorothiazide, a medication to decrease the likelihood and frequency of stone formation, that continued through the end of the medical records. *See* ECF 115-1 at 68-99, 141-158; *see also* Nasser Dhayat, *Hydrochlorothiazide and Prevention of Kidney-Stone Recurrence*, N. ENGL. J. MED. 399(9), 781-91 (Mar. 2, 2023), *available at* https://pubmed.ncbi.nlm.nih.gov/36856614/ (last visited Mar. 3, 2026). He also had a prescription for tamsulosin (Flomax) through August 25, 2025, and different pain

2

medications, including at various points acetaminophen, meloxicam, and ibuprofen, through December 11, 2024. See ECF 115-1 at 5, 84 (ending date for tamsulosin); ECF 115-1 at 147, 149 (ending date for pain medication).

On January 29, 2024, Mr. Emery presented to the nurses station at ISP, complaining of kidney pain. ECF 115-1 at 7. His vitals were not within a normal range, and the doctor was contacted. *Id.* at 8. He was given Toradol for pain, a urine analysis was conducted, and he was held in the medical unit until he felt better. *Id.*

Mr. Emery's next reported kidney stone was on December 5, 2024. ECF 108 at 11. Mr. Emery says he stopped by the nurse's station and alerted medical staff that he was passing a new kidney stone and requested pain medication and Flowmax. *Id.* He says he never received those and passed the kidney stone on December 18, 2024, without receiving any medication. *Id.* His active prescription for pain medication expired on December 11, 2024. *See* ECF 115-1 at 147, 149.

Mr. Emery reports that on May 7, 2025, he submitted a medical request form, alerting staff that he was passing a new kidney stone and requested pain medications and Flowmax (tamsulosin) to assist with the passing of this stone. ECF 108 at 13. He did not receive any medication and passed the stone on May 12, 2025. *Id.* According to his medical records, in May 2025, he had active prescription for lisinopril (a blood pressure medication) and hydrochlorothiazide, but no evidence of pain medication or tamsulosin. ECF 115-1 at 151, 155.

Mr. Emery next complained of a kidney stone on July 17, 2025, when he completed a medical request form about a new kidney stone he was passing, writing EMERGENCY

on the top and handed it to his counselor, who turned it into the medical staff immediately. ECF 108 at 13. He passed the stone on Monday, July 21, 2025, without having ever received medical attention or pain medication. *Id.*

The Warden's response to Mr. Emery's motion does not mention the December 5, 2024 kidney stone, the May 7, 2025 kidney stone, or the July 17, 2025 kidney stone, and there is no evidence in the record that Mr. Emery received medical attention for these acute episodes.

ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss

on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The third and fourth factors, harm to the opposing party and the public interest, merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and quotations omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Because Mr. Emery's claims relate to the denial of medical care, they are governed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d

5

262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). In plain terms, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

In looking at the treatment Mr. Emery is receiving for his kidney stones, the record shows that he is receiving constitutionally adequate medical care to address the risk of future kidney stones through the hydrochlorothiazide he takes daily. However, the record seems slim on whether he is receiving adequate treatment for those times in which he is actively passing a kidney stone. The Warden does not address the facts raised in Mr. Emery's motion that Mr. Emery has alerted medical staff, either in person or through medical request forms, when he begins passing a stone, so the court accepts as true that Mr. Emery has passed several, individual kidney stones while at Indiana State Prison. But, apart from one time in January 2024, there is no evidence in the record as to whether he received any medical care during these acute phases, even if infrequent.

The pain associated with passing a kidney stone qualifies as a serious medical need. *See Montanez v. Feinerman*, 439 F. Appx. 545, 549 (7th Cir. 2011) (untreated kidney stones states an Eighth Amendment claim). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to an Eighth Amendment violation, particularly when the delay "exacerbates an inmate's medical condition or unnecessarily

prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted). Here, the record does not contain evidence that Mr. Emery had access to pain medication after December 2024, and his efforts to contact medical staff to obtain care may well have been unsuccessful in the past.

There is no evidence, however, that Mr. Emery is currently passing a kidney stone. That may not affect the court's ability to order relief regarding future episodes. An exception for mootness applies when a dispute is "capable of repetition, yet evading review" and applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17 (1998)). The record establishes some likelihood that Mr. Emery will suffer another kidney stone. His medical records document a history of kidney stones and medical staff have acknowledged and addressed this risk by prescribing hydrochlorothiazide. Moreover, his kidney stones tend to pass in less than a week, which would not provide enough time for judicial review before any future stone passes.

Before turning to the preliminary injunction factors, including a determination of whether Mr. Emery, given his recurrent condition, has in fact established a likelihood of success regarding the inadequacy of his care when he is actively passing a kidney stone, the court finds it appropriate to seek further input from the Warden about the plan in place to address this reality. Mr. Emery's theory of the case has shifted over the course of this lawsuit as he has learned more information, and the court would benefit from a

response focused on the provision of medical care when Mr. Emery is in the moment passing a kidney stone. The Warden is in a position to investigate where breakdowns may have occurred and suggest options for what type of injunction, should that prove necessary, would provide Mr. Emery with adequate medical care and still "be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer*, 682 F.3d at 681 (citations and quotations omitted).

For these reasons, the court:

(1) ORDERS the Warden to file a supplemental brief by **April 2, 2026**, addressing the preliminary injunction factors of irreparable harm, harm to the opposing party, and the public interest as they relate to Mr. Emery's future medical care when he is actively passing a kidney stone, and suggesting what type of plan or preliminary injunction would adequately address Mr. Emery's needs in light of the needs and management of the prison; and

(2) ORDERS that Mr. Emery may file a reply by **April 16, 2026**.

SO ORDERED.

March 19, 2026                                  *s/ Damon R. Leichty*
                                                Judge, United States District Court