UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FRANK W. EMERY,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, MERTHAKIS, and KAREN FUGAN,<br><br>Defendants. | CAUSE NO. 3:23cv809 DRL-AZ |

OPINION AND ORDER

Frank W. Emery, a prisoner without a lawyer, filed a second motion for a preliminary injunction about the care he is receiving at Indiana State Prison for kidney stones. ECF 108. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of

[his] case." *Id*. at 763 (quotations omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The third and fourth factors, harm to the opposing party and the public interest, often merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and quotations omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Inmates are "not entitled to demand

specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.* at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). In plain terms, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019). A delay in receiving needed medical care can be a constitutional violation if it unnecessarily prolongs pain. *See Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020).

In his preliminary injunction motion, Mr. Emery he asserted that he received a CT scan of his left kidney in November 2023, but in the years since then, he had not learned the results from that scan, no kidney stone surgery had been scheduled, and he continued to pass smaller kidney stones without receiving adequate care to ease their passing. The Warden of Indiana State Prison was ordered to file a response to the motion "describing/explaining how Frank W. Emery is being provided constitutionally adequate medical care for recurrent kidney stones to the extent required by the Eighth Amendment, including information about the results from the November 2023 CT scan and how the pain from kidney stones is being managed." ECF 111. Mr. Emery later moved to withdraw the issue in the preliminary injunction motion regarding the treatment of the large kidney stone found in the CT scan and proceed solely on the issue of treatment of the recurring kidney stones. ECF 136.

So narrowed, the court found that the record showed that Mr. Emery was receiving adequate medical care to address the risk of future kidney stones through the hydrochlorothiazide he takes daily. ECF 141 at 6. However, the Warden did not address the facts raised in Mr. Emery's motion that he had alerted medical staff, either in person or through medical request forms, when he began passing a stone but did not receive timely medical attention and passed the stone without medical attention. *Id.* Specifically, Mr. Emery identified three dates—December 5, 2024, May 7, 2025, and July 17, 2025—when he says he began passing a kidney stone, alerted medical staff to the situation, and did not receive medical care before the stone passed a few days later. *Id.* at 4. Therefore, although Mr. Emery's overall kidney stone treatment appeared adequate, the record did not contain information to establish whether Mr. Emery was receiving constitutionally adequate medical care when he was actively passing a kidney stone. The court, therefore, ordered the Warden to file a supplemental response, focusing on the provision of medical care when Mr. Emery is actively passing a kidney stone. "The Warden is in a position to investigate where breakdowns may have occurred and suggest options for what type of injunction, should that prove necessary, would provide Mr. Emery with adequate medical care and still 'be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right.'" ECF 141 at 8 (citing *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012)).

In his supplemental response, ECF 143, the Warden described his investigation into Mr. Emery's claims that he did not receive pain medication on or about December 5, 2024, May 7, 2025, and July 15, 2025. Nikki Tafoya, RN, BSN, Executive Director of

Physical Health for the Indiana Department of Correction, reported to him that there was nothing in the Electronic Medical Record suggesting Mr. Emery asked for pain medication or was seen by any medical personnel around those dates. ECF 143-1 ¶ 9. The Warden also reported the Indiana Department of Correction had no record of the healthcare requests Mr. Emery claims he made on or around those dates. *Id.* ¶ 10.

The lack of any record of Mr. Emery's attempts to seek medical attention suggests two possibilities—either Mr. Emery did not seek medical help as he described or his attempts to obtain medical help were stymied by an ineffective system. At the preliminary injunction stage, when the court need not accept Mr. Emery's allegations as true, the court will nonetheless credit Mr. Emery's allegations that he sought help because he has identified witnesses who would be able to corroborate his account and provided copies of the healthcare requests he says he made.[1] *See Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Based on this, the court finds a likelihood of success on the merits that Mr. Emery is not receiving constitutionally adequate care when he is in an acute episode of actively passing a kidney stone.[2]

---

[1] This finding, however, is for purposes of this motion only and does not apply later in the case at summary judgment or trial.

[2] The Warden argues that Mr. Emery cannot establish a likelihood of success on the merits because he had not shown the Warden has been deliberately indifferent to his medical care. The Warden is being sued in his official capacity, meaning the suit is against the state, itself, acting through the Indiana Department of Correction. *See Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state."). Therefore, the Warden's personal involvement in the constitutional violation is not necessary in a claim for injunctive relief. Deliberate indifference for injunctive relief can be shown through "pervasive deficiencies in prison medical treatment" that add up to an inference that prison officials are "persist[ing] in a course of action known to be ineffective" that results in deficient care. *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir.

With a likelihood of success on the merits established, the court turns to the other factors regarding a preliminary injunction. The Warden argues Mr. Emery cannot establish irreparable harm because he is not currently passing a kidney stone, and at a recent medical assessment, he reported no pain for four months, had no urinary symptoms, and had no complaints. ECF 143-1 at 14. He argues the current record does not show Mr. Emery is facing an ongoing untreated emergency or has any lingering effects from his past incidents. The Warden acknowledges that Mr. Emery might pass another stone at some unknown point in the future, but argues that is not enough to justify broad preliminary relief.

Irreparable harm must be the type of harm that cannot be compensated at the end of the lawsuit by money damages. *See D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) ("Because money damages could make D.U. whole again should she prevail in her lawsuit, she does not meet the standard for irreparable harm."). Here, although Mr. Emery is not currently passing a kidney stone, because it is undisputed that he is prone to forming them, it is reasonable to prepare for the event that he will pass another one in the future and will need a prompt medical assessment to determine the proper course of treatment. In the event he passes another stone without receiving prompt medical attention, the harm should be addressed by medical attention, not by money damages.

As to the third prong, the balance of equities tips in Mr. Emery's favor because the Eighth Amendment guarantees him a level of medical care for serious medical needs. *See*

---

2022). Repeated failures to obtain timely medical care for serious medical needs through the usual system could show deliberate indifference.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The court is cognizant that the Warden is subject to limited resources and competing interests in providing healthcare at the prison within the budgetary and administrative constraints available. But a narrowly tailored injunction will impose a minor burden on the prison as compared with the potential pain Mr. Emery might experience if passing a kidney stone without adequate pain management.

As to the fourth prong, an injunction is in the public interest because the public expects state officials to uphold their constitutional duty to provide inmates with constitutionally adequate medical care. Therefore, the preliminary injunction motion will be granted. However, in selecting an appropriate remedy, the court recognizes

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotations, brackets, and citations omitted).

The Warden proposes a narrow plan for when Mr. Emery is actively passing a kidney stone. In addition to using the ordinary channels for requesting medical care, the Warden proposes that Mr. Emery may send a written message to the Warden's office, clearly indicating that it is an emergency and that he is passing a stone and needs medical attention. He may also ask his Unit Team Manager, Case Work Manager, or Case Worker to call the Warden's office to report that he is passing a stone and needs medical attention.

The Warden attests that his office staff will alert him immediately upon receipt of such a message or phone call, and if he is unavailable, his office staff will alert the deputy warden on duty. Then, the Warden or his deputies will promptly determine whether Mr. Emery has already been seen by medical personnel and, if not, will see to it that Mr. Emery is immediately taken to the infirmary to be seen by medical staff.[3] He says this will create a rapid-notice pathway for Mr. Emery to be promptly evaluated by medical personnel when he reports he is actively passing a stone.

Mr. Emery agrees that the Warden's proposed relief is appropriate but asks that the court add three conditions. First, he asks that the court order that he be allowed to keep on his person a 30-day supply of Flomax and pain medication in the event medical staff does not act promptly during future kidney stone episodes. This relief is too specific for the court to order for injunctive relief, as designating that he be required to keep certain medication on his person is more intrusive than necessary to remedy the constitutional violation. Next, Mr. Emery asks that the Warden ensure that staff assigned to his current location or cell house are aware of these conditions. That is a reasonable request when limited to those staff members who may be involved in assisting Mr. Emery with obtaining medical care in the event he is passing a kidney stone. Finally, he asks that the Warden be ordered to help facilitate a future surgery to remove the large stone in his kidney. This request is far outside the scope of this preliminary injunction, as Mr. Emery withdrew the treatment of the large kidney stone from consideration in this motion.

[3]Neither the Warden nor the court will dictate what medical treatment, if any, is appropriate following this evaluation.

For these reasons, the court:

(1) GRANTS the motion for leave to make corrections (ECF 136);

(2) GRANTS IN PART the motion for a preliminary injunction (ECF 108);

(3) ORDERS the Warden of Indiana State Prison in his official capacity to establish a system in which, in the event that Frank Emery begins passing a kidney stone, he may send a written message to the Warden's office, clearly indicating that it is an emergency and that he is passing a stone and needs medical attention, or he may ask his Unit Team Manager, Case Work Manager, or Case Worker to call the Warden's office to report that he is passing a stone and needs medical attention. Upon receipt of such a message or phone call, office staff will immediately alert the Warden or, if he is unavailable, the deputy warden on duty, who will promptly determine whether Mr. Emery has already been seen by medical personnel and, if not, will see to it that Mr. Emery is immediately taken to the infirmary to be seen by medical staff;

(4) ORDERS the Warden of Indiana State Prison in his official capacity to ensure notice of this order is given to his office staff, the deputy warden, and Frank Emery's Unit Team Manager, Case Work Manager, and Case Worker;

(5) ADVISES Frank Emery that this emergency notice system is to be used ONLY in the event that he begins passing a kidney stone and misuse of the system for other medical needs may result in the preliminary injunction being dissolved;

(6) DIRECTS the clerk to email a copy of this order to the Warden of Indiana State Prison; and

(7) ORDERS the Warden to acknowledge receipt of the order to the clerk and DIRECTS the clerk to make a notation on the docket upon receiving confirmation of receipt of the delivery.

SO ORDERED.

August 21, 2026

*s/ Damon R. Leichty*
Judge, United States District Court